Neal K. Ostler
6380 N. Silver Sage Dr.
Park City, UT 84098
Day Telephone:(435) 649-7152
         Plaintiff, pro se

FILED IN UNITED STATES DISTRICT
COURT, DISTRICT OF UTAH

**AUG 2 6 2004**

**MARKUS B. ZIMMER, CLERK**
BY_____
      DEPUTY CLERK

RECEIVED CLERK

**MAY 0 7 2004**

U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH - CENTRAL DIVISION

| | |
|---|---|
| **NEAL K. OSTLER**<br>    Plaintiff "pro se"<br><br>    vs.<br><br>**STATE OF UTAH** and it's Departments of Public Safety, Commerce, Human Resource Management, Attorney General's Office, and the Department Executive Directors in their official and in their individual capacity, and twenty-five John and Jane Doe employees of these Departments in both their official and individual capacity.<br>              et, al  Defendants | **COMPLAINT**<br>and<br>**NOTICE OF APPEARANCE**<br>and<br>**REQUEST FOR JURY TRIAL**<br><br><br>**DATE STAMP: 05/07/2004 @ 16:24:30**<br>**CASE NUMBER: 2:04cv435**<br><br>**Judge Dale A. Kimball**<br>**DECK TYPE: Civil**<br>**DATE STAMP: 08/27/2004 @ 11:50:46**<br>**CASE NUMBER:  2:04CV00435  DAK** |

Comes now Neal K. Ostler, and files this Complaint and Notice of Appearance of his intent to represent himself as a "pro se" plaintiff. Mr. Ostler affirms that he is a resident of the State of Utah residing in Summit County and that all of the events and occurrences in this complaint occurred within the Jurisdiction of this U.S. District Court for Utah and requests a right to have the matter heard by a jury of his peers.

## I. RIGHT TO SUE from E.E.O.C.

Mr. Ostler has filed complaints with the Equal Employment Opportunity Commission and was assigned Charge Number 350-2004-01453.



Subsequent to their investigation, which consisted of an in-take questionnaire and committee review, the E.E.O.C. sent Mr. Ostler a letter entitled: "Dismissal and Notice of Rights" signed by the Acting District Director, Susan L. Grace, and dated Feb 09, 2004. A copy of this Right To Sue letter is attached herein and included with **Exhibit A.**

Then in February, 2004, Mr. Ostler was terminated from his employment with Salt Lake City Corporation and so he processed charges with the E.E.O.C. which were handled as separate cases and has also sent other fresh charges that are pending assignment and files numbers.   The list of such numbers and agencies named follows:

|  |  |
|---|---|
| 350-2004-02248 | Salt Lake City Corporation |
| 350-2004-02494 | Salt Lake Community College |
| 350-2004-02495 | State of Utah Attorney General |
| 350-2004-02496 | State of Utah Dept of Labor |
| 350-2004-02497 | State of Utah Dept of Public Safety |
| Pending | State of Utah Dept of Health |

**Note:** Copy of all EEOC right to sue letters are attached and labeled **Exhibit A.**

## II. JURISDICTION

This action is brought pursuant to Title VII of the Civil Rights Act of 1964 as amended, for employment discrimination, for civil rights violations pursuant to 42 U.S.C. §1983 (b) and §1985, and pursuant to The U.S. Constitution. Jurisdiction is specifically conferred on this Court by 42 U.S.C. §2000e(5). Equitable and other relief are also sought under 42 U.S.C. 2000e(5)(g). Jurisdiction is also based on 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. §§ 1981 et seq.     Violation of Utah law for wrongful termination from employment involves the same set of facts and circumstances.

## III. RELATED COURT HISTORY

**Utah 3rd District Court**

After wrongful termination in 1991, Mr. Ostler filed a lawsuit versus three state agencies and their executive directors: The Dept. of Public Safety, The Dept. of Commerce, and The Dept. of

Corrections. Mr. Ostler's claims were filed in 1993 and resulted from blacklisting and defamation of character by the defendants. The lawsuit was settled in the Fall of 1996 with Mr. Ostler receiving (1) a sum of money, (2) a letter of reinstatement from the Dept of Public Safety, and (3) agreement by the defendants not to interfere with his rightful need to pursue his career.

In 1992, in the midst of these actions, Mr. Ostler began work as an Adjunct at Salt Lake Community College (SLCC) and was the original curriculum developer/instructor in what became the A.S. Degree of Environmental Technology. Between 1993 and 1998 Mr. Ostler's sole means of support was from his employment at SLCC and during this time he founded the non-credit training program that by Spring of 1997 became recognized by the Utah Board of Regents and titled as The Environmental Training Center.

Throughout this period Mr. Ostler labored many hours each week beyond that for which he was being compensated with the expectation of fulfillment of his supervisor's promise to create a full-time position within the Division of Continuing Education. In the Fall of 1997, Mr. Ostler's position was reorganized under the Public Safety Institute at the College which manages the Police Academy, and he began to work under the supervision it's director, James Hoffman, who also sat on P.O.S.T. (Peace Officers Standards and Training) Council at the time..

Mr. Ostler had good reason to believe that James Hoffman brought blacklisting and defamation of character information back to the College from P.O.S.T. and shared it with his supervisor who, in the Fall of 1997, did a 180° about face and asserted there would never be a full-time position created for him at the College: "Not In A Cold Day In Hell" were the words of John Latkiewicz, Director of The Division of Continuing Education and Mr. Ostler's previous supervisor and promisor.

Mr. Ostler had labored for more than six years to the unjust enrichment of the College and to the retardation of his personal career and so, in the Spring of 1998, he left the College. Mr. Ostler

3

believed he was entitled to benefits denied him under the false pretense of promises made to him by his supervisor but his efforts to settle through a formal Notice of Claim were ignored by the College. Thus in the Spring of 1999 Mr. Ostler filed a lawsuit against SLCC claiming breach of contract and denial of benefits which was given **Case No. 99-0907653** and assigned to Judge Glen Iwasaki.

Judge Iwasaki ordered summary dismissal of Mr. Ostler's claims and he filed a Notice of Appeal and that appeal was determined to be untimely. Following "Remittitur" by the Utah Court of Appeals restoring jurisdiction to the 3rd District Court, Mr. Ostler, filed Rule 60(b) motions on May 5th, 2004, for relief from judgement based on new evidence and previously filed an independent action based on the same argument which has not yet been served on the individual defendants in that case.

**Note:** Mr. Ostler's "pro se" claims have never been heard on the merits or the evidence.

## U.S. District Court

The causes of action, partially re-enumerated herein, were first filed by Mr. Ostler in this Court "pro se" in April of 2001, under Case No. **2:01-CV-00291** before Honorable Tena Campbell and Magistrate Judge Boyce. The original complaint in the referenced case is based on Mr. Ostler's efforts to obtain fair and equal treatment by the State of Utah while making and submitting more than fifty competitive applications for employment openings which are openings deemed to be equal opportunity positions under state and federal law. Mr. Ostler developed his claims against the defendants through three separate cycles of submitting such employment applications spread across four years between 1997 and 2001 and were first processed through the Equal Employment Opportunity Commission (EEOC).

Subsequently the Court dismissed without prejudice Plaintiff's claims for violation of §1983 Equal Opportunity and his 14th Amendment claims of Rights To Equal Protection of the Law against the State and it's Agencies and Departments. The Court's justification was based on the argument that

4

Mr Ostler was unable to provide citations of existing or previous cases before the Court wherein a person like himself, not being a member of any one of the specifically protected special interest minority groups, had been afforded those rights or had their claims to such rights successfully prosecuted in either state or federal court.

Please note that the District Court did not evaluate whether or not such rights are to be afforded every citizen regardless of their race, color, religion, national origin, gender, age, or sexual preference. Instead, the Court evaluated the validity of Mr. Ostler's civil rights claims based on whether or not the actions taken toward him were because of his membership in one of those same special interest minority groups and, finding that he did not make that claim, summarily dismissed.

The Court, however, granted Mr. Ostler leave to prepare and file an amended complaint and, while researching the law and searching for points and authorities related to his case, Mr. Ostler learned of the requirements of the law regarding the Age Discrimination In Employment Act and realized that he had a "prima facie" case for claims of violation of the ADEA. Consequently, he filed a charges with the EEOC and was issued letters of permission to proceed and he included his ADEA claims in his Amended Complaint.

Mr. Ostler attempted to obtain power of discovery to proceed with the prosecution of his case in early 2003 but was unable to obtain such power and, instead, spent most of the year fending off various motions of the Defendants, i.e., in March of 2003, the Defendants filed a "Motion To Dismiss On The Ground Of Immunity" for the remaining claims of Age Discrimination in Employment against The State Agencies and Departments. The State of Utah is protected by the 11th Amendment and by it's Governmental Immunity Law with the result that it's Agencies and Departments are not individuals who can be sued in Federal Court for violations of the Aged Discrimination in Employment Act.

Therefore, on October 1, 2003, the Court rightfully rendered an Order that reads: "Utah's Motion to Dismiss Remaining Federal Claims is GRANTED as to the State and it's agencies on grounds of Eleventh Amendment Immunity." In it's Order this Court also dismissed against the individuals but GRANTED the Plaintiff and "Enlargement of Time to Serve Individual Parties."

On or about November 12th, 2003, Judge Tena Campbell dismissed against the individuals and later in December closed the case. Mr. Ostler made attempts to obtain relief from the decision through appropriate motion but each attempt was denied.

Subsequently Mr. Ostler has filed a Notice of Appeal and the matter is currently being given it's due process in the 10th Circuit Court of Appeals here is has been given case number: **03-4293.**

## IV. ABSTRACT OF FACTUAL HISTORY

Separate and aside from the claims in the above case, Mr. Ostler has developed material facts in support of his claims that the defendants are continuing to act in violation of federal law and that such actions now comprise of §1983 Violations for Conspiracy under §1985. See: Plaintiff's Affidavit labeled **Exhibit B**, and attached herein, which is exact copy submitted to the E.E.O.C..

Since 1997, Mr. Ostler has been attempting to obtain work within the public employment sectors of Utah to finish up the requirements he needs to qualify for his Utah Public Safety retirement. This has led to four complete cycles of employment applications and has resulted, with only one or two exceptions out of several dozen incidents, in his bonafide efforts being entirely ignored by the named Departments and Agencies of the State of Utah. Mr. Ostler has not only been unable to land a position but he has failed to even be invited to interview, more than on one or two occasions, despite his extensive qualifications and despite having made more one-hundred and twenty-five applications.

During the Fall of 2000, Mr. Ostler discovered a "cover up" or clandestine operation taking place within the State's computer generated resume and automatic job referral system operated by the Utah

6

Department of Human Resource Management (DHRM).  In his affidavit (Exhibit B),  Mr. Ostler

describes how this system allows the Departments of Public Safety and the Attorney General's Office

and others to conduct their recruitment and hiring efforts while acting entirely as a phantom or ghost,

i.e., neither agency posts or publishes  their job openings on a public bulletin board anywhere which

results in no one from the general public knowing there are openings, they do not have to reply to any

applicants referred to them by the computer (based on the applicant's qualifications) unless they plan

to interview them, and the applicant never has a clue whether or not they were ever referred with the

result that they have no clue if they were discriminate against or not.   The system allows them to treat

any and all applicants in any fashion whatsoever that pleases them, either in applicant's favor or

against them, without the applicant ever even knowing about it.

Mr. Ostler attests to having been referred to more than two dozen openings within the Department

of Public Safety between 1998 and 2000  yet he never even knew about the automatic referrals by the

computer.  Thus he never even knew he was being denied an opportunity to fully participate in the

equal opportunity process that is supposed to result in the hiring of the applicant most qualified for

the open positions.

At the same time, since 1997,  there have been numerous positions posted on the DHRM  public

bulletin board by other agencies  to which Mr. Ostler has made a direct referral and direct application

himself personally and not relied upon the automatic computer to make the referral.  In these cases

the employer is supposed to at least respond to the applicant but in all but one or two instances Mr.

Ostler has had his application entirely ignored by the employer posting the opening.  Mr. Ostler

documented many of those instances prior to the Fall of 2003 and attempted to enjoin those  involved

into his earlier cases, outlined above, but in these instances the Court denied his motions.

7

Then again in the Fall of 2003, Mr. Ostler began renewed efforts that continue to this day to obtain interviews and compete for openings through the DHRM automatic referral system. At present Mr. Ostler is still unable to discover if there are any positions open within the Departments of Public Safety and Attorney General's office because these agencies are continuing to keep such positions entirely secret from the general public .. and thus from Mr. Ostler, with one exception: In early April of this year, 2004, there happened to be one lone position advertised by the Dept of Public Safety and to which Mr. Ostler applied, i.e., the position of Secretary. Despite that Mr. Ostler has demonstrated adequate skill levels in keyboarding (through Job Service vocational testing), has a B.S. Degree in Business Mgt., and has more than a dozen years of experience in running the daily affairs of an office at Salt Lake Community College and as principal and sole-proprietor of The Environmental Training Center ... he was declined an opportunity to interview for the position of secretary. See: **Exhibit C**, attached herein.

There has also been a couple of interviews after Mr. Ostler made direct referrals for posted openings and are outlined in his affidavit (**Exhibit B**).

Mr. Ostler has also made many applications outside of the Utah DHRM computer skill-match system. After interviewing with Salt Lake City Corporation, he  accepted a position as a Safety Coordinator with The Dept of Public Services in November of 2003. This was pretty close in physical proximity to most of the defendants in his actions and he suspected it would not be long before his new employers heard word and he would lose his job because of blacklisting. Despite his best efforts to go above and beyond the requirements of his position in the first week of February, 2004, Mr. Ostler was terminated by Salt Lake City Corp because he did not fit in.  Mr. Ostler has filed "Notice of Claim" with the City and also charges of retaliation against SLCCorp with the E.E.O.C. in which

8

he names the State of Utah and it's agencies and departments as co-conspirators or actors in the loss of his employment.

Mr. Ostler includes discussion about the retaliation in this document along with his claims about conspiracy and deprivation of rights and he realize that at some future date he may have to either amend this complaint, motion to enjoin his claims of retaliation in this lawsuit, or file a separate complaint upon receipt of the paper work from the E.E.O.C.

### IV. FIRST CLAIM FOR RELIEF:

### §1983 and §1985 CONSPIRACY

Plaintiff asserts that the Defendants, under color of state law in their official and individual capacity, acted severally and jointly and in concert with one other pursuant to a material purpose to impair the Plaintiff's property and/or liberty interests and acted to deprive him of his civil rights under the U.S. Constitution and have violated Federal Law.

Plaintiff asserts that the individual Defendants and State Agencies are not immune from liability for violations of Constitutional Law. Under qualified immunity doctrine "government officials performing discretionary functions are generally shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald* 457 U.S. 800, 817 (1982) also *Watson v. University of Utah Med Ctr* 75 F3d 569 (10th Cir 1996).

### §1983 Conspiracy under §1985.

The conditions of this Federal Law are met when: two or more persons conspire for purpose of impeding, hindering, obstructing, or defeating in any manner, the due course of justice in any state or territory, with the intent to deny any citizen the equal protection of the laws, or when two or more persons in any state or territory conspire, for the purpose of depriving, .... , either directly or indirectly,

9

any person or class of person of the equal protection of the laws, or of equal privileges and immunities under the laws.  In addition the Courts have ruled that conspirators "must have violated an independent right granted to plaintiff *AFL-CIO v Scott* 463 U.S. 825"  ...  and  " language to be given broad interpretation *Gritken v. Breckenridge* 403 U.S. 88.       *Kush v. Rutledge,* 460 U.S. 719: §1985(3) creates a CLAIM FOR RELIEF against conspiracies which deprive persons of equal protection or other federal rights, privileges, or immunities.  Here, however, the conspiracy must be motivated by racial or class-based antimus.  See also: *Griffen v. Breckenridge,* 403 U.S. 88, 100.

From his studies, Mr. Ostler has learned that to prove a §1983 conspiracy he  must accomplish satisfactory performance of the following set out by the 7th Circuit Court of Appeals in *Hampton v. Hanrahan* 600 F.2d, 600, also see: *Askew v. Millard,* 191 F.3d at 953:

1.  Combination of two or more persons acting in concert to commit unlawful act – with agreement to inflict injury (to deprive him/her of constitutional right) and commit an overt act resulting in damage. *Rockin v. Univ of Penn,* 386 F. Supp. 992.  "Because conduct of defendants consisted of numerous overt acts, conduct could not be considered single act of a single entity."

2.  Circumstantial evidence may be sufficient to prove agreement between conspirators as direct evidence not necessary.  *City of Omaha Employee v. City of Omaha,* 833 F.2d 650 "circumstantial evidence may be only  way plaintiff can prove defendants reached agreement to conspire against plaintiff."

3. Plaintiff need not prove every conspirator knew exact details of plan or identify of all participants so long as conspirators shared the same objective.

4.  Questions of conspiracy are not to be taken from the jury when jury can infer from circumstances that defendants had a meeting of the mind and thus reached an understanding to bring about the conspiracy objectives.

10

5. In a §1983 conspiracy case plaintiff must allege and prove conspiracy and actual deprivation of rights .. but in accord with item 3., above. *McLellan v. _ _ _ _ Power & Light,* 526 F.2d 879. "In determining class based animus of the defendant state or local government entity must satisfy four factors:" (1) whether the conduct had a discriminatory impact on a burdened class of persons more than others, (2) whether the historical grounds of the conduct reveals a series of official actions taken for invidious purposes, (3) the degree to which the conduct departed from either the normal procedural sequences or the usual substantive criteria, (4) whether the contemporaneous statements of the persons who made the decisions d demonstrate that the decision was based on class-based animus. See also: *Village of Arlington v. Metro Housing,* 429 U.S. 252, *Talbert v. City of Richmond,* 648 F.2d 925, *Stanges Hosp. V. Riddick,* 748 F. Supp 319.

6. Specific intent to cause constitutional deprivation **not** required .. A "smoking gun" is not necessary. The 11th Circuit ""rejected a smoking gun requirement and put general rule this way: "nothing more than an understanding and wilful participation is necessary to show the kind of joint action that will subject private parties to §1983 liability." *Bendiburg v. Dempsey,* 909 F.2, 463. "Local government officials are absolutely immune from punitive damages liability, but **not** from compensatory damages liability (emphasis added by Plaintiff)."

*Parrish v. Maryland,* 437 F. Supp 623. "A conspiracy directed toward a particular class of persons is motivated by invidious discriminatory animus when members of the class are treated differently than members of other classes and there is no rational justification for treating the members of one class differently than other, similarly situated persons or classes."

Mr. Ostler is able to demonstrate the primary pieces of his claims and through information that will be forthcoming from discovery will more than aptly demonstrate the remaining pieces when it is demonstrated how widespread the treatment he has received pervades Utah government agencies and

departments and ow pervasive the practice has been of not affording him his rights to participate in the competitive recruitment process we know of in this Country as Equal Opportunity.

In addition Mr. Ostler will be able to show, when evidence is forthcoming following discovery, that these actions of the defendants are egregious, repetitive, have been occurring since 1997 and that the defendants have become enabled by Mr. Ostler's previous lack of success and so have become emboldened and more conspicuous in their ongoing violation of Mr. Ostler's rights.

### V. SECOND CLAIM FOR RELIEF:

### VIOLATION OF RIGHT OF EQUAL PROTECTION

Mr. Ostler first brought a claim for violation of his right to equal protection under the U.S. Constitution in his earlier lawsuit filed in this court in the Spring of 2001. These claims were dismissed by this Court because Mr. Ostler could find no case history, common law, or other court precedent that affords these rights to anyone except to those than members of special interest groups such as color, race, religion, sexual preference, etc. Mr. Ostler asserts that they are also his rights as a U.S. Citizen and made an attempt to "appeal" these findings before the 10th Circuit Court of Appeals but it was ruled at the time that they (10th Circuit) did not yet have jurisdiction.

**<u>A Class of One</u>**

The Courts have instructed that equal protection claims do not have to be based on membership in a class or group. The Supreme Court so held in ***Village of Willowbrook v. Olech***, 120 S. CT at 1073. "Demand was arbitrary and capricious. According to court, this stated a §1983 equal protection claim, it's cases had recognized equal protection claims brought by a "class of one" here plaintiff alleged intentionally different treatment from others similarly situated without a rational basis for such treatment. In ***Olech, ibid***, the Court modified the second part of it's selective prosecution test by **<u>removing</u>** the requirement that malice or bad faith must be shown for a "class of one" equal protection

violation. The District Court dismissed the lawsuit pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a cognizable claim under the Equal Protection Clause. Relying on Circuit Court precedent, the Court of Appeals for the Seventh Circuit reversed, holding that a plaintiff can allege an equal protection violation by asserting that state action was motivated solely by a """'spiteful effort to ""'get"" him for reasons wholly unrelated to any legitimate state objective.'"" 160 F.3d 386, 387 (CA7 1998) (quoting *Esmail v. Macrane*, 53 F.3d 176, 180 (CA7 1995)). It determined that Olech''s complaint sufficiently alleged such a claim. 160 F.3d, at 388. We granted certiorari to determine whether the Equal Protection Clause gives rise to a CLAIM FOR RELIEF on behalf of a ""'class of one"" where the plaintiff did not allege membership in a class or group.*

Other cases have recognized successful equal protection claims brought by a ""'class of one,'"" where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. See *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441 (1923); *Allegheny Pittsburgh Coal Co.* v. *Commission of Webster Cty.*, 488 U.S. 336 (1989). In so doing, we have explained that """'[t]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State''s jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.'"" *Sioux City Bridge Co., supra*, at 445 (quoting *Sunday Lake Iron Co. v. Township of Wakefield*, 247 U.S. 350, 352 (1918)).

The reasoning above is directly applicable to this case. Olech''s complaint can fairly be construed as alleging that the Village intentionally demanded a 33-foot easement as a condition of connecting her property to the municipal water supply where the Village required only a 15-foot easement from other similarly situated property owners. See *Conley v. Gibson*, 355 U.S. 41, 45——46 (1957)."The complaint also alleged that the Village''s demand was ""'irrational and wholly arbitrary'"" and that the

Village ultimately connected her property after receiving a clearly adequate 15-foot easement. These allegations, quite apart from the Village''s subjective motivation, are sufficient to state a claim for relief under traditional equal protection analysis. We therefore affirm the judgment of the Court of Appeals, but do not reach the alternative theory of ""subjective ill will"" relied on by that court. It is so ordered."

Since having his claims  equal protection dismissed, Mr. Ostler has learned that there is precedent in the Courts to demonstrate the rights of everyone to equal protection regardless of whether or not they belong to a particular minority or special interest group.  U.S. Supreme Court Justice Anthony Kennedy put it eloquently it in the context of the Equal Protection Clause in *Miller v. Johnson*, 515 U.S. 900, 91(1995), "At the heart of the Constitution's guarantee of equal protection lies the simple command that the Government must treat citizens as individuals, not as simply components of a racial, religious, sexual or national class."

Either as an individual or as a "group of one" Mr. Ostler has been treated differently than others in his group and such constitutes  the basis of his claims of violation of his rights to equal protection under the law.

## VI. THIRD CLAIM FOR RELIEF:
## VIOLATION OF EQUAL OPPORTUNITY LAWS

In his original lawsuit Mr. Ostler claimed that he has as much constitutional  right to having an equal opportunity to participate in public funded programs and employment as any other citizen of the United States.   These claim were dismissed by this Court because Mr. Ostler was unable to demonstrate any case history to support those claims.

Much has been written since the  Supreme Court held that it was a violation of this concept in deciding *Adarand Constructors, Inc. v. Peña.*,  for any institution to treat any individual differently

14

just because of their status or lack of status as a minority or special interest group member. Justice O'Connor repeats Justice Powell's defense of this conclusion: "If it is the individual who is entitled to judicial protection against classifications based upon his racial or ethnic background because such distinctions impinge upon personal rights, rather than the individual only because of his membership in a particular group, then constitutional standards may be applied consistently."

Who can improve on Justice Harlan's plea, in his powerful and prophetic dissent in **Plessy v. Ferguson**, for a "color blind Constitution!" ?? Yet this past June the Supreme Court reaffirmed these convictions in deciding the matter of the University of Michigan's admissions policies regarding the school's treatment of applicants. For Mr. Ostler the words of Justice O'Connor were quite clear in finding " that the University did not conform with Justice Powell's guidelines," set forth in **Bakke** "when he emphasized the importance of considering each particular applicant as an individual, assessing all of the qualities that individual possess, and in turn, evaluating that individual's ability to contribute to the unique setting of higher education," and "preferring members of any one group for no other reason that race or ethnic origin is discrimination for it's own sake." **Gratz v Hamacher v. Hamacher,** , U.S. Supreme Court, June 23, 2003.

The Courts have consistently declared that the rights belong to individuals and not group members.

Finally, in support of it's findings in **Grutter,** the Court quotes the U.S. Constitution, **14th Amendment**, §2. "Because the Fourteenth Amendment protects persons, not groups, all governmental action based on race - should be subjected to detailed judicial inquiry to ensure that the *personal* right to equal protection of the laws has not been infringed. "

Mr. Ostler asserts that he would always have had a clear avenue to pursue discrimination claims had he been a member of any one or several minority or special interest groups but that does not mean that he should not now have equal protection of the law and equal opportunity to participate in

15

competitive employment recruitment practices.   If any of the Defendants can demonstrate that a minority was hired who was otherwise equally as qualified as Mr. Ostler then the State's practice is not illegal. However, if he is excluded from the process just because he belongs to a less represented minority or special interest  group then the  State has violated his rights equal opportunity.

It is Mr. Ostler's position that this Court will eventually find that a public  employer must hire the person most qualified for a position regardless of where they were born and to whom, and regardless of his color, race, religion, etc. etc.

## VII. FOURTH CLAIM FOR RELIEF:
## AGE DISCRIMINATION

Mr. Ostler is currently fifty-five years of age and has been unable to obtain an explanation of any sort whatsoever that accounts for the widespread treatment he has received from the State of Utah and it's employees.   The only reason within the tradition special interest groups is that of age discrimination.

In the past Mr. Ostler  has reasoned, by pure conjecture,  that his history of legal entanglements with the state of Utah and it's various arms has been directly tied to his public  retirement of which he would have been eligible several years ago had his employment not been interfered with by the defendants.  However, through his research  he came to  realize that it is not his obligation to explain why the defendants have treated him as they have but, instead,  it is their responsibility according to the law to provide an explanation that is within the excusable exceptions provided for in the ADEA.

These claims were lodged in Mr. Ostler's existing complaint but have never been heard on the merits and the defendants have never afforded an explanation to be accepted or refuted either by  Mr. Ostler or by this Court.

## VIII. FIFTH CLAIM FOR RELIEF:
## RETALIATION

The law provides that when an individual is pursuing his civil and constitutional rights in a legitimate and lawful manner that an employer cannot retaliate. The Courts have defined retaliation to mean several things, (1) termination with good reason, (2) failure to promote, (3) fiaIure to afford some other benefit afforded every other employee in the same class, (4) an increase in supervisory controls that didn't exist prior, (5) etc. etc.

Mr. Ostler was able to obtain a position with Salt Lake City Corporation and now herein references his attached affidavit in which he recounts the circumstances surrounding his termination coincidental to release of findings by the EEOC. See: **Exhibit D.**

Mr. Ostler has a number of reasons to substantiate his claims of being retaliated regardless of the fact, to be proven through discovery, that he was doing his job at the City and was fitting in very well with his co-workers despite that such was not an objective written into his job description.

**Implied Covenant of Good Faith and Fair Dealing:** Mr. Ostler brings these claims against all defendants for the damages received from the retaliation actions of terminating his employment. He recognizes that there is issue to be argued about his being on a "probationary employee" basis with SLCCorp and believes that the "Implied Covenant of good faith and fair dealing" applies to a public employer and requires that they not terminate someone for reasons that are not justifiable and documented even during periods of probation as might occur with an "at will" employer.

## XI. SIXTH CLAIM FOR RELIEF:
## DEFAMATION OF CHARACTER

The law makes it wrongful for a prior employer to reach out and blacklist or influence an employment decision that is damaging to a party especially while the party is attempting to stand up for their rights.

Mr. Ostler asserts that the coincidence of the demise of his employment is due to the actions of the defendants who have been conspiring to prevent him from obtaining public employment and to

track his every movement in such efforts. He further asserts that this will be proven to be more than coincidence with information that will be forthcoming when he has conducted discovery. He asserts that the record will show that he lost his job directly from communications by the defendants with person at Salt Lake City Corp regarding his prior lawsuits, EEOC claims, and his every effort to obtain his retirement, equal opportunity, and employment rights in Utah.

## IX. INJURY, DAMAGES and RELIEF SOUGHT

Had Mr Ostler been successful during his first cycle of searching for a position in law enforcement in the Fall of 1997 he would have been eligible to have begun receiving Public Safety Retirement benefits approximately two years and two months later or by January of 2000. Therefore the Plaintiff claims loss of retirement benefits from January 2000 through to the resolution date of his lawsuit.

Had he become employed when he was first eligible and first began looking for work in the early Fall of 1977, Mr. Ostler would have had benefits such as employer contributions to retirement, health insurance, holiday and sick leave and other benefits normally afforded all public employees.

Mr. Ostler has had his reputation damaged, his inability to find and retain work has cost him a loss of self-esteem and serious mental and emotional damage and harm to his physical health brought on by the resulting financial stress and strains.

Wherefore, as appropriate to his several Claims, Plaintiff prays for relief as follows:

- General, actual or special damages in an amount to be proven at trial.

- Broad consequential and compensatory damages in an amount to be proven at trial.

- Punitive damages in an amount to be proven at trial.

- An Order from the Court compelling the hire and reinstatement of Plaintiff to a position eligible for Public Safety Retirement from a date and at an annual salary amount to be proven at trial.

18

- An Order from the Court compelling the reinstatement of Plaintiff's Public Safety Retirement Account at an annual benefit amount to proven at trial.

- An Order from the Court compelling named and other John Doe defendants to retract their adverse and derogatory statements which cannot be proven to true.

- An Order from the Court enjoining the named and John Doe Defendants from further impairing or depriving Plaintiff of his liberty rights and due process rights with respect to employment positions, equal opportunity and otherwise, for which he is qualified.

- Attorney fees to the extent allowable by law and equity pursuant to 42 U.S.C. §1988 (b) and other appropriate statutes

- Pre- and post-Judgement interest on all pecuniary awards to the extent allowable by law and equity.

- Costs incurred in prosecuting Plaintiffs claims to the extend allowable by equity and law.

- Such other and further relief the Court deems just and equitable.

## X. JURY DEMAND

Plaintiff requests the right to have this matter hear by a Jury of his peers.

## XI. SUMMARY

Plaintiff believes that there is a conspiracy among the good ole boy network of law enforcement to keep him from every being hired and, consequently, from ever being allowed to qualify for the needed amount of service to be eligible for his Public Safety Retirement. He believes and asserts that the Defendants are sharing "blacklist" information against him contrary to both Federal Law as well as Utah State Constitutional Law that forbids such interference with the rights of every citizens who need to be gainfully employed, be able to rightfully pursue the career of their choice, and be allowed

the right to at least participate in the competitive employment process with the expectation that the best qualified person is hired to any "equal opportunity" position ... regardless of any other reason.

## RIGHT TO AMEND THIS COMPLAINT

This complaint is being initially filed by Mr. Ostler to be timely with the requirements that he do so within 90 days of receipt of his initial right to sue letter from the EEOC dated 09 Feb., 2004.  By Mr. Ostler's count the expiration date is on or about May 10th, 2004.

Plaintiff understands he  has at least one opportunity to amend this complaint and would have 120 days to serve the defendants from the date of initial filing.

Executed this _7th_ day of May,  2004.

**NEAL K. OSTLER**
Plaintiff, pro se

# Exhibits/ Attachments to this document have **not** been scanned.

# Please see the case file.